HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE THE APPLICATION OF
AIMEE KIDOGI BIKUNDWA,

         Petitioner,

  v.

SCHADRACK RUYENZI,

         Respondent.

CASE NO. 2:22-cv-01604

ORDER

## I.   INTRODUCTION

This matter comes before the Court on Petitioner's Motion for Return of Child to the State of Habitual Residence ("Petition"). Dkt. # 1. Petitioner Aimee Kidogi Bikundwa ("Petitioner") seeks the return of the minor children, N.R. and S.R., to Belgium. Petitioner alleges Respondent Schadrack Ruyenzi ("Respondent") wrongfully removed the children from Belgium and wrongfully retained the children in Washington. For the reasons set forth below, the Court **GRANTS** the Petition and orders the return of N.R. and S.R. to Belgium.

## II. FACTUAL FINDINGS

The parties were married in Rwanda in 2006 and moved to Belgium later that year. Petitioner currently resides in Belgium, while Respondent resides in Washington. The parties have two Belgian-born children: N.R., who was born in 2007, and S.R., who was born in 2008. Both children are Belgian citizens and lived in Belgium from birth to July 2022. Petitioner and Respondent divorced in 2012. Pursuant to a March 29, 2012 divorce and custody order issued by the Court of First Instance of Nivelles in Brussels, Belgium, Petitioner was granted primary custody of N.R. and S.R., with Respondent having visitation every other weekend and half of school vacations.

After the parties divorced, Respondent moved to the Seattle area. On July 5, 2022, N.R. and S.R. traveled from Belgium to Washington in order to visit with Respondent for several weeks. Upon the children's arrival in Washington, Respondent contacted Petitioner to let her know that the children arrived safely. This visit was conducted in accordance with the provisions of the parties' Belgian custody order, and Petitioner remained in contact with the children throughout the visit. N.R. and S.R were due to return to Belgium on August 16, 2022 and the children's return airfare had already been purchased. However, N.R. and S.R. did not return to Belgium as planned and instead, Respondent kept both children in his custody here in the United States. At the time, Respondent did not communicate with Petitioner regarding his decision to keep the children in the United States. Petitioner contacted N.R. and S.R. and learned that Respondent had refused to take the children to the airport. The day after Respondent failed to return the children to Belgium, Petitioner filed a child abduction complaint with Belgian authorities and sought legal counsel.

On November 9, 2022, Petitioner filed a Petition for Return of the Child to the State of Habitual Residence, Dkt. # 1, and a Motion for Order to the United States Marshal to Serve Respondent and for Other Relief. Dkt. # 8. On December 5, 2022, this Court granted Petitioner's Motion for service by a United States Marshall and set a

hearing date on the Petition. Dkt. # 10. On December 12, 2022, this Court amended its Order to allow for further time to serve Respondent. Dkt. # 11. On December 13, this Order granted Petitioner's request for French interpretation services at the Petition hearing. Dkt. # 13. This Court conducted a hearing on December 21, 2022 where both Petitioner and Respondent appeared in person, and Petitioner was represented by counsel. Petitioner, Respondent, and the minor children S.R. and N.R. gave testimony to this Court. The Court accepted Petitioner's Belgian identification card, the parties' March 29, 2012 divorce and custody order, and Petitioner's Belgian child abduction complaint and supporting documentation into evidence.

### III. ANALYSIS

#### a. Jurisdiction and Burden of Proof

The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 (the "Hague Convention" or the "Convention"), was adopted in 1980 by the Fourteenth Session of the Hague Conference on Private International Law. The Convention's goal is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and ... to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, Art. 1. Both the United States and Belgium are signatories to the Convention. U.S. Department of State, Bureau of Consular Affairs, Hague Abduction Convention Country List, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited December 21, 2022). The United States implemented the Convention through the enactment of the International Child Abduction Remedies Act (ICARA) (codified as amended at 22 U.S.C. §§ 9001-9011).

In drafting the Convention's provisions, the Conference attempted to address a particular type of "kidnapping" scenario: one in which a person, usually a parent,

removes a child to, or retains a child in, a country that is not the child's habitual residence in order "to obtain a right of custody from the authorities of the country to which the child has been taken." Elisa Pérez–Vera, Hague Conference on Private International Law 428–29, ¶ 13 (1982) (hereinafter, "Pérez–Vera Report ").[1] The Convention seeks to eliminate the motivation for such actions by requiring the court of the "requested State," or the country to which the child has been removed, to return a wrongfully removed or retained child to his or her country of habitual residence, unless the removing party establishes an exception or defense to return. Hague Convention, Art. 12.

Unless and until there is a determination that the child need not be returned, "the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained *shall not decide on the merits of rights of custody*." *Id.* Art. 16. Indeed, the "Hague Convention is generally intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court." *Friedrich v. Friedrich (Friedrich II)*, 78 F.3d 1060, 1064 (6th Cir. 1996).

The key operative concept of the Convention is that of "wrongful" removal or retention. The removal or the retention of a child is to be considered wrongful where:

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

---

[1] The explanatory report of Elisa Perez-Vera, the official Hague Conference reporter, is "recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." Hague International Child Abduction Convention, Text and Legal Analysis, 51 Fed. Reg. 10494, 10503 (Mar. 26, 1986).

      b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, Art. 3. The petitioner must establish this by a preponderance of the evidence. *See* 22 U.S.C. § 9003(e)(1).

In the event that a petitioning party shows that the child was wrongfully removed or retained, Article 13 provides certain exceptions to the mandate that the child be returned to his or her habitual residence. Article 13(a) provides that the requested state is not bound to order the return of the child when it is shown by a preponderance of the evidence that the petitioner "was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention." Additionally, Article 13(b) contains an exception to mandatory return when a respondent can show by clear and convincing evidence that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *See* 22 U.S.C. § 9003(e)(2).

Although these exceptions or defenses are available, numerous interpretations of the Convention caution that courts must narrowly interpret the exceptions lest they swallow the rule of return. *See Friedrich II*, 78 F.3d at 1067 ("A federal court retains, and should use when appropriate, the discretion to return a child, despite the existence of a defense, if return would further the aims of the Convention").

With this framework in mind, we turn to the merits of Petitioner's request for the return of the children to Belgium.

**b.) Habitual Residence**

The term "habitual residence" was intentionally left undefined in the Convention. *Holder v. Holder*, 392 F.3d 1009, 1015 (9th Cir. 2004). To avoid formalistic determinations, the Conference found that the question of whether a person is or is not habitually resident in a specified country is a question of fact to be decided by reference to all the circumstances of any particular case. *Id.* Nevertheless, if a child is born where

the parents have their habitual residence, the child normally should be regarded as a habitual resident of that country. *Id.* at 1020; *see also Friedrich v. Friedrich*, 983 F.2d 1396, 1402 (6th Cir. 1993) ("This is a simple case. Thomas was born in Germany and resided exclusively in Germany until his mother removed him to the United States….therefore we hold that Thomas was a habitual resident of Germany…").

Here, both N.R. and S.R. were born in Belgium, their mother's country of residence, and lived there from birth to July 2022, when they traveled to the United States for what was intended to be a several-week visit with Respondent. Given the children's well-established prior residence in Belgium, Petitioner's long-standing residence in Belgium, and the Belgian order granting primary custody of the children to Petitioner, the Court finds that N.R. and S.R. were habitual residents of Belgium.

**c.) Wrongful Removal or Retention**

Having determined that the children's habitual residence was Belgium, the Court must next determine if Respondent's removal or renttion of the children was "wrongful" under the Convention. As stated above, the retention is considered wrongful where:

> a) it is in breach of *rights of custody* attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention *those rights were actually exercised*, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, Art. 3 (emphasis added).

Here, Petitioner has established by preponderance of the evidence that the retention of the children beginning in August 2022 was wrongful. The March 29, 2012 order issued by the Court of First Instance of Nivelles establishes that Petitioner was granted primary custody of the children, while Respondent was granted "secondary"

ORDER- 6

custody, with visitation every other weekend and split school vacations. Dkt. # 4, Ex. C; *see also* 22 U.S.C. § 9005 (Belgian order may be admissible in court without authentication).

Further, at the time that Respondent retained the children in Washington, Petitioner was in fact exercising her rights under the Belgian custody order. While the Convention does not define "exercise," courts have held that "if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." *Friedrich II*, 78 F.3d at 1066. There is no evidence that Petitioner abandoned the children in any way, and to the contrary, Petitioner quickly filed a child abduction complaint with Belgian authorities and sought assistance and counsel in returning the children back to Belgium. Additionally, children's plan for a temporary visit with Respondent underscores the fact that Petitioner intended on the children being returned to her custody in Belgium. The Court finds that Respondent's retention of the children in August 2022 was wrongful.

**d.) No Grave Risk of Harm**

Although Respondent does not expressly raise the "grave risk of harm" exception to the Hague Convention in his response to the Petition, he makes allegations of abuse of N.R. and S.R. at the hands of Petitioner and Petitioner's alleged current husband. He argues that the Convention provides that every child has the right to be protected against physical and mental violence, and states that his children are being abused and tortured in Petitioner's care. Respondent also argues that the children are happy in Washington, have iPhones with which they can communicate with the Petitioner regularly, attend a highly-ranked Washington high school, and can learn English in Washington — as opposed to the French and Dutch that Respondent claims are taught in Belgian schools. He requests a

finding that the children were abused by Petitioner and her alleged spouse and seeks an order that the children remain in his care.

United States courts have consistently recognized that, like the other exceptions to return of a child under the Convention, Article 13(b)'s exception for grave risk should be "narrowly drawn." *Cuellar v. Joyce*, 596 F.3d 505, 509 (9th Cir. 2010) (citing *Asvesta v. Petroutsas*, 580 F.3d 1000, 1020 (9th Cir. 2009)); *see also* 51 Fed. Reg. 10494, 10510 (Mar. 26, 1986) ("This provision was not intended to be used by defendants as a vehicle to litigate (or relitigate) the child's best interests…The person opposing the child's return must show that the risk to the child is grave, not merely serious."). Respondent has not shown, by clear and convincing evidence, that the minor children are at grave risk of harm should they be returned to Belgium. Respondent's assertions that the children are happy in the United States and will have access to a higher quality education and more robust human rights similarly fail. The grave risk exception "is not a license for a court in the abducted-to country to speculate on where the child[ren] would be happiest." *Friedrich II*, 78 F.3d at 1068. That inquiry is reserved for the Belgian courts. *Id.*

Here, no credible evidence of abuse has been submitted to the Court. Respondent's allegations are both vague and unsupported by evidence.[2] This is particularly evident given N.R and S.R.'s testimony before this Court that they had no objections to returning to Belgium and had no safety concerns about going back to their mother's home. Both N.R. and S.R. are high-schoolers who indicated that they understood the need to provide truthful testimony under oath, and the Court credits their testimony. Accordingly, Respondent has not met his burden of proof and the "grave risk of harm" exception does not apply.

---

[2] For example, Respondent asserts, "In our African custom, when a woman remarries she cannot bring the children, especially the young girls, to her new husband unless she is totally crazy, because they are always victims of rape and sexual slavery from her new husband." Dkt. # 1 at 4.

**e.) Costs and Attorney's Fees**

Congress has provided that a court "ordering the return of a child" under the Hague Convention shall award "necessary expenses incurred by or on behalf of the petitioner ... unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). Respondent has not established that it would be clearly inappropriate for him to pay for the costs associated with the children's return to Belgium. Accordingly, the Court orders Respondent to bear the costs of any and all transportation required to return the children to Belgium, including all airfare costs incurred by Petitioner to attend the December 21, 2022 hearing. Further, Petitioner may file a motion for litigation costs and attorney's fees within 15 days of the date of this Order and Respondent may file objections or otherwise respond, as allowed by applicable law.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition (Dkt. # 1). The children, S.R. and N.R., are ordered to be returned to Belgium in the custody of Petitioner. Respondent is further ordered to deliver all of N.R.'s and S.R.'s belongings to the office of Petitioner's counsel, Karr Tuttle Campbell, located at 701 Fifth Avenue, Suite 3300, Seattle, Washington 98104, by **December 21, 2022 at 5:00 p.m.**

DATED this 21st day of December, 2022.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Judge

ORDER- 9